# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| ANZETTA WARREN, | ) | |
| | ) | |
| Plaintiff, | ) | **09 CV 6498** |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner | ) | **Magistrate Judge Young B. Kim** |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | **December 8, 2010** |

## MEMORANDUM OPINION and ORDER

On July 27, 2010, this court entered an opinion and order reversing the Commissioner of Social Security's decision denying Anzetta Warren's application for supplemental security income ("SSI") under the Social Security Act and remanding her case to an administrative law judge ("ALJ") for further consideration. Warren now seeks attorney's fees and costs pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d), for the prosecution of her appeal before this court. For the following reasons, Plaintiff's Motion for Attorney's Fees Under the Equal Access to Justice Act and for Entry of Final Judgment Order is granted:

### Background[1]

Warren claims that she is disabled by several physical and mental impairments. When the Social Security Administration ("SSA") denied her SSI application, Warren sought and

---

[1] A more thorough accounting of this case's history—including the evidentiary record and the ALJ's reasoning—is set forth in this court's summary judgment opinion. (R. 26.)

was granted a hearing before an ALJ. (A.R. 32-33.) After considering Warren's evidence and consulting medical and vocational experts, the ALJ issued a decision finding that Warren suffers from impairments that are severe, but not disabling as defined in the Social Security Act. (Id. at 23-31.) The ALJ applied the required five-step analysis, *see* 20 C.F.R. § 416.920(a)-(g), finding that Warren's severe impairments include asthma, decreased vision, chronic low-back pain, major depressive disorder with post-traumatic stress disorder and anti-social tendencies, and polysubstance use "in claimed remission." (Id. at 23.) At step four the ALJ determined that Warren has a residual functional capacity ("RFC") to perform light work with limitations including engaging in simple, routine work with "no more than occasional need for far acuity" and "only brief interaction with the public." (Id. at 26.) At step five the ALJ concluded that Warren could return to her past relevant work as a cleaner or tray assembler. (Id. at 30-31.)

The Appeals Council granted Warren's request for review of the ALJ's decision. (A.R. 8.) Although the Appeals Council agreed with the ALJ's findings under step one through three and adopted the ALJ's step-four conclusions regarding Warren's RFC, it disagreed that Warren's past work amounted to substantial gainful activity. (Id. at 6-7.) The Appeals Council then applied grid rule 202.10, which directs a finding of not disabled for a claimant of Warren's age who retains an RFC to perform a narrow range of light work, and thus concluded that she is not eligible for SSI. (Id. at 7-8.) The Appeals Council's decision became the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481.

Warren sought judicial review of the Commissioner's decision and the parties consented to the jurisdiction of this court. *See* 28 U.S.C. § 636(c). In granting summary judgment to Warren, this court determined that the ALJ made reversible errors in assessing Warren's credibility and crafting her RFC and that the Appeals Council committed harmful error in applying the grid to find Warren not disabled. This court remanded the case to the ALJ for further consideration.

**Analysis**

This court may award fees under EAJA if the following four elements are met: (1) the claimant was a "prevailing party"; (2) the government's position was not "substantially justified"; (3) there were no special circumstances that would make an award unjust; and (4) the claimant files a complete and timely application. 28 U.S.C. § 2412(d)(1)(A); *Stewart v. Astrue*, 561 F.3d 679, 683 (7th Cir. 2009). Here the Commissioner disputes Warren's assertion that its position was not substantially justified. It is the Commissioner's burden to demonstrate that both its pre-litigation conduct—which includes the decisions of the ALJ and Appeals Council—and its litigation position were substantially justified. *Golembiewski v. Barnhart*, 382 F.3d 721, 724 (7th Cir. 2004); *Cummings v. Sullivan*, 950 F.2d 492, 496-97 (7th Cir. 1991).

As the Seventh Circuit has acknowledged, determining whether the government's position was substantially justified presents a difficult line-drawing task. *See United States v. Thouvenot, Wade & Moerschen, Inc.*, 596 F.3d 378, 381 (7th Cir. 2010). "The case must

3

have sufficient merit to negate an inference that the government was coming down on its small opponent in a careless and oppressive fashion." *Id.* at 381-82. To negate that inference, the government must show the following: "(1) a reasonable basis in truth for the facts alleged; (2) a reasonable basis in law for the theory propounded; and (3) a reasonable connection between the facts alleged and the theory propounded." *Conrad v. Barnhart*, 434 F.3d 987, 990 (7th Cir. 2006). Put differently, the government must show that its position was "justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Although this determination requires the court to look to both the government's pre-litigation conduct and litigation position, it will "make only one determination for the entire civil action." *Conrad*, 434 F.3d at 990.

Although in some respects this was a close case, the government has not shown that, when viewed as a whole, its position in this case was substantially justified. This court acknowledged that the ALJ had a difficult task in sorting out the evidence surrounding Warren's disability claims, (*see* R. 26, SJ Op. at 2.), but several aspects of the Commissioner's pre-litigation position conflict with relevant precedent. For example, the Appeals Council adopted the ALJ's RFC, which includes several non-exertional limitations, but found that Warren's past work was not "substantial gainful activity." (A.R. 6-7.) Therefore, the Appeals Council concluded that the ALJ erred in finding Warren not disabled based on her ability to return to past relevant work. (Id. at 8.) The Appeals Council then applied the grid to find her not disabled, even though the grid does not account for Warren's

non-exertional limitations. *See Villano v. Astrue*, 556 F.3d 558, 564 (7th Cir. 2009). Because Warren does not meet the straight-forward criteria described by the grid, *see* 20 C.F.R. Pt. 404, Subpt. P, App. 2, the Appeals Council's application of the grid was not substantially justified. At the summary judgment stage the government conceded that the Appeals Council erred, but argued that the error was harmless based on the ALJ's finding that Warren's RFC would allow her to work as a housekeeper or tray assembler. Thus the government's litigation position would mitigate the Appeals Council's error only to the extent that it can show that its defense of the ALJ's RFC determination was substantially justified.

The government was not substantially justified in defending the ALJ's determination that an RFC for routine, simple work accounts for Warren's limitations in concentration, persistence, or pace. The ALJ based that determination on the testimony of the medical expert ("ME"), who testified that "a routine, repetitive work environment" would accommodate Warren's reduced capacity to tolerate stress or make judgments. (Id. at 230.) The ME did not tie the accommodation to Warren's limitations in concentration, persistence, or pace. The Seventh Circuit has rejected the contention that restricting a claimant to routine, simple work accounts for limitations in concentration, persistence, and pace. *See O-Connor-Spinner v. Astrue*, __ F.3d __, 2010 WL 4812819, at *5 (7th Cir. Nov. 29, 2010); *Stewart*, 561 F.3d at 684-85; *Young v. Barnhart*, 362 F.3d 995, 1004 (7th Cir. 2004). Although the position is not without nuance—where a claimant's limitations in concentration, persistence,

or pace are stress- or panic-related, or where the underlying conditions giving rise to the limitations in concentration, persistence, or pace are incorporated into the expert's testimony, an ALJ's restriction of the claimant to low-stress work might pass muster, *O-Connor-Spinner*, 2010 WL 4812819, at *4-*5—in responding to Warren's summary judgment motion, the government did not acknowledge the precedent establishing this principle, let alone argue that Warren's case falls within any exception to the general rule.[2] In its response to the current EAJA petition, the government again ignores the relevant cases and does not explain why it was substantially justified in defending the ALJ's assertions that the ME's testimony supported the RFC. In *Stewart*, the Seventh Circuit found that the government's defense of a strikingly similar ALJ error was not substantially justified and reversed a denial of attorney's fees for that reason. 561 F.3d at 683-85.

Some of the ALJ's mistakes in determining Warren's credibility can be chalked up to a failure to sufficiently articulate her reasoning, and therefore would not necessarily support a finding that her position lacked substantial justification. *See Cunningham v. Barnhart*, 440 F.3d 862, 864-65 (7th Cir. 2006). But the government has not shown that it was substantially justified in defending those aspects of the decision that arose from impermissible speculation and statements not supported by the record. *Id.* at 865 (suggesting that a position "based on speculation with no support in the record" is not substantially

---

[2] In fact, with the exception of its defense of the ALJ's credibility determination and its harmless error argument, the government did not cite any caselaw in support of any of its analysis.

justified). For example, the ALJ disbelieved Warren's testimony that she had quit using drugs without help because, in the ALJ's opinion, "it is not usual for heavy drug abusers to control their addiction without the help of a program, mentor, organization, or life incident as a catalyst." (A.R. 28.) That finding was not based on record evidence, nor did the ALJ attempt to determine whether Warren had experienced some catalyst that led to her sobriety. Yet it is well-established that an ALJ may not base her credibility determinations on unsupported speculation. *See Blakes ex. rel. Wolfe v. Barnhart*, 331 F.3d 565, 570 (7th Cir. 2003); *White ex rel. Smith v. Apfel*, 167 F.3d 369, 375 (7th Cir. 1999). In its summary judgment response and again in its response to the current EAJA petition, the government does not acknowledge the lack of record support for the ALJ's conclusion, and instead asserts that the ALJ's assumption was "reasonable" because Warren had admitted to past heavy drug use. The government has not pointed to any record evidence or caselaw to support the ALJ's conclusion in this regard. For these reasons, the court finds that these aspects of the government's position fall short of the substantial justification threshold.

Similarly, this court faulted the ALJ for asserting that Warren did not seek medical treatment because she did not "like" it, and that she therefore sought drugs from friends. This court acknowledged that Warren testified that she received pain medication from acquaintances, but could not identify the basis for the ALJ's assertion that Warren does not "like" medical treatment. The court was concerned not only that this statement lacked record support, but that it implied that the ALJ assumed Warren's failure to obtain medical

7

treatment was based on her personal preference rather than the barriers posed by her financial and mental-health conditions. The court pointed out in any event that "it is unclear why her supposed distaste for medical treatment, by which she could have meant visiting doctors or undergoing testing, is inconsistent with her willingness to take pills to relieve her pain." (R. 26, SJ Op. at 15.) In responding to the EAJA petition, the government cites Warren's testimony that she obtained pain pills from friends, but ignores the court's core concern—the ALJ's assumption that Warren does not "like" to obtain treatment. Neither at the summary judgment stage nor in the current response does the government identify record evidence that supports the ALJ's assumption or develop an argument to defend it. Accordingly, this court cannot conclude that the government's position on that finding was substantially justified.

Finally, in granting Warren summary judgment, this court pointed out that two of the limitations identified by the ALJ were insufficiently explained and based on faulty logic. Namely, the ALJ found that Warren is limited in far visual acuity only "occasionally" without explaining the conclusion that her visual impairment is irregular, and did not explain why Warren's depression and anti-social tendencies would limit her from interacting with the public but not with coworkers and supervisors. (A.R. 26.) Again, standing alone this court's finding that the ALJ did not sufficiently articulate her reasoning here might not compel the conclusion that her decision lacked substantial justification, but the government compounded the error in its summary judgment response by failing to address head-on the errors that Warren identified. Instead, it simply highlighted the evidence supporting a finding that

8

Warren has visual limitations without acknowledging her argument that the ALJ erred in limiting her to occasional use of far visual acuity without explaining why hers was not a blanket limitation. Similarly, the government highlighted the testimony on which the ALJ based her limitation regarding Warren's interaction with the public without addressing Warren's argument that the ALJ failed to explain why a limitation in interacting with the public, but not with co-workers and supervisors, would accommodate her anti-social tendencies. Because the government side-stepped these controversies in its summary judgment response, and does not explain here its decision to do so, this court cannot identify a reasonable basis for its position with respect to these arguments. *See Conrad*, 434 F.3d at 990. Based on the mistakes made by the ALJ and Appeals Council, coupled with the government's failure to articulate why it had a rational basis for defending those mistakes at the summary judgment, the government has not met its burden of showing that its position in this case was substantially justified.

Turning to the reasonableness of the fee request, Warren seeks $7,389.47 for her prosecution of this action, representing 41.7 hours of work at an hourly rate of $173.75, 1.6 hours of legal assistant work at the rate of $85 per hour, and $8.10 in costs. Warren also seeks $399.26 in attorney's fees for work performed by counsel with respect to this EAJA petition. The government has not contested the reasonableness of the fee request. Warren's attorney acknowledges that any EAJA award is payable to Warren, rather than to him directly. (R. 32 at 1.)

EAJA provides that "attorney fees shall not be awarded in excess of $125.00 per hour unless the court determines that an increase in the cost of living . . . justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A)(ii). In 2008 the Seventh Circuit recognized that "given the passage of time since the establishment of the hourly rate, a cost-of-living adjustment is warranted." *Tchemkou v. Mukasey*, 517 F.3d 506, 512 (7th Cir. 2008). The requested hourly rate is supported by cost of living calculations set forth in the Consumer Price Index—which Warren attached to her petition. Courts have approved the requested hourly rate for late 2009 and 2010—the year in which Warren's attorney completed the bulk of his work on this case. *See, e.g., McDonald v. Astrue*, 09 CV 027, 2010 WL 4818092, at *2 (W.D.N.C. Nov. 22, 2010); *Zellner v. Astrue*, 08 CV 1205, 2010 WL 4739517, at *2 (M.D. Fla. Nov. 16, 2010); *Hieu Thi Tran v. Astrue*, 09 CV 4074, 2010 WL 3928482, at *1 (C.D. Ill. Sept. 23, 2010). The number of hours Warren's attorney spent on this case falls within the permissible range for social security cases, which has been noted to be 40-60 hours. *See Schulten v. Astrue*, 08 CV 1181, 2010 WL 2135474, at *6 (N.D. Ill. May 28, 2010) (collecting cases). Accordingly, this court finds that the fee request is reasonable.

## Conclusion

Plaintiff's Motion for Attorney's Fees Under the Equal Access to Justice Act and for Entry of Final Judgment Order is granted. Warren is awarded attorney's fees in the amount of $7,789.09, to be paid to Warren and mailed to Warren's attorney's office.

ENTER:

_____
Young B. Kim
United States Magistrate Judge